UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BLAKE ELLMAN;<br><br>THOMAS R. ROGERS; *and*<br><br>ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC.,<br><br><div align="center">*Plaintiffs*,</div><br>v.<br><br>MATTHEW PLATKIN, in his official capacity as Acting Attorney General of New Jersey,<br><br>PATRICK J. CALLAHAN, in his official capacity as Superintendent of the New Jersey Division of State Police,<br><br>LT. RYAN MCNAMEE, in his official capacity as Officer in Charge of the Chester Police Department, *and*<br><br>KENNETH J. BROWN, JR., in his official capacity as Chief of the Wall Township Police Department<br><br><div align="center">*Defendants*.</div> | Civil Action No. 22-cv-4397 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Daniel L. Schmutter
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com
*Attorneys for Plaintiffs*

**LOCAL CIVIL RULE 10.1 STATEMENT**

The mailing addresses of the parties to this action are:

Blake Ellman
#3 Cristina Court
Chester, New Jersey 07930

Thomas R. Rogers
3005 Clayton Dr.
Wall Township, NJ 07719

Association of New Jersey Rifle & Pistol Clubs, Inc.
5 Sicomac Road
Suite 292
North Haledon, New Jersey 07508

Matthew Platkin
Office of the Attorney General
RJ Hughes Justice Complex
25 Market Street, Box 080
Trenton, New Jersey 08625

Patrick J. Callahan
Office of the Superintendent
New Jersey State Police
P.O. Box 7068
West Trenton, New Jersey 08628

Lt. Ryan McNamee
Chester Police Department
1 Parker Road
Chester, New Jersey 07930

Kenneth Brown Jr.
Chief of Police
Wall Township Police Department
2700 Allaire Rd.
Wall Township, NJ 07719

## INTRODUCTION

Plaintiffs Blake Ellman, Thomas R. Rogers, and Association of New Jersey Rifle & Pistol Clubs, Inc., (collectively "Plaintiffs"), by and through the undersigned attorneys, file this Complaint against the above-captioned Defendants, in their official capacities as the state officials responsible under New Jersey law for administering and enforcing the State's laws and regulations governing the possession of firearms. Plaintiffs seek declaratory and injunctive relief: a declaration that New Jersey's ban on the possession of ordinary semi-automatic rifles and shotguns commonly possessed by millions of law abiding Americans for lawful purposes ("common semi-automatic firearms") is facially unconstitutional under the Second and Fourteenth Amendments; and an injunction compelling Defendants to refrain from enforcing the invalid ban. In support of their Complaint against Defendants, Plaintiffs hereby allege as follows:

1. The State of New Jersey has criminalized one of the most common and important means by which its citizens exercise their fundamental right of self-defense. By banning common semi-automatic firearms, the State has reached into the homes—the most intimate of private spaces—of its law-abiding citizens, and invaded their constitutional right to keep and bear arms for the defense of themselves and their families.

2. Without relief from this Court, Defendants will continue to violate the constitutional rights of New Jersey's law-abiding citizens and reinforce the erroneous notion that the right to keep and bear arms is nothing more than "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010); s*ee also New York State Rifle & Pistol Association v. Bruen*, 597 U. S. ____, slip op. at 62 (2022).

3. There is no historical tradition of firearms regulation that supports the ban of common semi-automatic firearms. *Bruen*, 597 U.S. at ___, slip op. at 15.

4. Worse yet, Defendants will continue these constitutional violations without any realistic prospect of diminishing the misuse of firearms. All it does is leave law-abiding citizens more vulnerable to attack from better-armed and more ruthless assailants.

5. Plaintiffs, law-abiding residents of New Jersey and a state organization dedicated to defending the right to self-defense, bring this action to vindicate the constitutional rights being denied them by the State of New Jersey.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over Plaintiffs' claim under 28 U.S.C. §§ 1331 and 1343.

7. Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) & (b)(2).

## PARTIES

9. Plaintiff Blake Ellman is a law-abiding resident and citizen of the United States and the State of New Jersey. He resides at #3 Cristina Court Chester, New Jersey 07930. He is a member of Association of New Jersey Rifle & Pistol Clubs, Inc.

10. Plaintiff Thomas R. Rogers is a law-abiding resident and citizen of the United States and the State of New Jersey. He resides at 3005 Clayton Dr., Wall Township, NJ 07719. He is a member of Association of New Jersey Rifle & Pistol Clubs, Inc.

11. Plaintiff Association of New Jersey Rifle & Pistol Clubs, Inc. ("ANJRPC") is a not-for-profit membership corporation, incorporated in the State of New Jersey in 1936, which

represents its members. Its address is 5 Sicomac Road, Suite 292, North Haledon, New Jersey 07508. ANJRPC represents the interests of target shooters, hunters, competitors, outdoors people, and other law-abiding firearms owners. Among ANJRPC's purposes is aiding such persons in every way within its power and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to purchase and possess firearms and magazines. The New Jersey ban on the common semi-automatic firearms at issue in this case are thus a direct affront to ANJRPC's central mission. ANJRPC has tens of thousands of members who reside in New Jersey. ANJRPC brings the claim herein on behalf of its members.

12. Defendant Matthew Platkin is the Acting Attorney General of New Jersey. As Acting Attorney General, he exercises, delegates, or supervises all the powers and duties of the New Jersey Department of Law and Public Safety, including the Division of State Police within that Department, which is responsible for executing and enforcing New Jersey's laws and regulations governing the possession of firearms and magazines. His official address is Office of the Attorney General, RJ Hughes Justice Complex, 25 Market Street, Box 080, Trenton, New Jersey 08625. He is being sued in his official capacity.

13. Defendant Patrick J. Callahan is the Superintendent of the New Jersey Division of State Police. As Superintendent, subject to the oversight and supervision of the Attorney General, he exercises, delegates, or supervises all the powers and duties of the New Jersey Division of State Police, including executing and enforcing New Jersey's laws and regulations governing the possession of firearms and magazines. His official address is Office of the Superintendent, New Jersey State Police, P.O. Box 7068, West Trenton, New Jersey 08628. He is being sued in his official capacity.

14. Defendant Lt. Ryan McNamee is the Officer In Charge for the Chester Police Department and is the chief law enforcement officer in the jurisdiction in which Plaintiff Ellman resides. His official address is Chester Police Department, 1 Parker Road, Chester, New Jersey 07930. He is being sued in his official capacity.

15. Defendant Kenneth R. Brown, Jr. is the Chief of Police for the Wall Township Police Department and is the chief law enforcement officer in the jurisdiction in which Plaintiff Rogers resides. His official address is Wall Township Police Department, 2700 Allaire Rd., Wall Township, NJ 07719. He is being sued in his official capacity.

## FACTUAL ALLEGATIONS

### New Jersey's Ban on Common Semi-Automatic Firearms

16. Since 1990, New Jersey has criminalized the possession of certain common semi-automatic firearms, which it defines by reference to a list of enumerated banned firearms as well as a list of prohibited features (the "Act").

17. The Act prohibits, effective May 1, 1990, a list of approximately 66 common semi-automatic rifles and shotguns. Semi-automatic firearms fire only a single round with one pull of the trigger. The Act further prohibits:

> "Any firearm manufactured under any designation which is substantially identical to any of the firearms listed above."

> "A semi-automatic shotgun with either a magazine capacity exceeding six rounds, a pistol grip, or a folding stock.

N.J.S. 2C:39-1(w). These firearms are not "machine guns," which are fully automatic and continue to fire until the trigger is released or the firearm runs out of ammunition.

18. A firearm is "substantially identical," and therefore also banned, if it meets the following definition set forth in an August 19, 1996 Attorney General Guidelines[1]:

A semi-automatic firearm should be considered to be "substantially identical," that is, identical in all material respects, to a named assault weapon if it meets the below listed criteria:

A. semi-automatic rifle that has the ability to accept a detachable magazine and has at least 2 of the following:

1. a folding or telescoping stock;
2. a pistol grip that protrudes conspicuously beneath the action of the weapon;
3. a bayonet mount;
4. a flash suppressor or threaded barrel designed to accommodate a flash suppressor; and
5. a grenade launcher;

B. a semi-automatic pistol that has an ability to accept a detachable magazine and has at least 2 of the following:

1. an ammunition magazine that attaches to the pistol outside of the pistol grip;
2. a threaded barrel capable of accepting a barrel extender, flash suppressor, forward handgrip, or silencer;
3. a shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the nontrigger hand without being burned;
4. manufactured weight of 50 ounces or more when the pistol is unloaded; and
5. a semi-automatic version of an automatic firearm; and,

C. a semi-automatic shotgun that has at least 2 of the following:

1. a folding or telescoping stock;
2. a pistol grip that protrudes conspicuously beneath the action of the weapon;
3. a fixed magazine capacity in excess of 5 rounds; and
4. an ability to accept a detachable magazine.

19. N.J.S. 2C:39-5(f) pejoratively and incorrectly labels these firearms as "assault firearms" and makes it unlawful for any person to "knowingly have in his possession an assault

---

[1] Those guidelines are available at https://www.state.nj.us/lps/dcj/agguide/assltf.htm or in PDF at https://www.state.nj.us/lps/dcj/agguide/3assltf.pdf.

firearm . . . except if the assault firearm is licensed pursuant to N.J.S. 2C:58-5 . . . .[2]

20. The license to possess common semi-automatic firearms under N.J.S. 2C:58-5(b) requires that an applicant demonstrate that he qualifies for a permit to carry a handgun pursuant to N.J.S. 2C:58-4 and that a judge of the Superior Court of New Jersey "finds that the public safety and welfare *so require*." Emphasis added.

21. Upon information and belief, either zero or close to zero such licenses have been issued by the Superior Court since 1990, and Plaintiffs are not aware of any such license *ever* having been issued.

22. The requirements for such a license "creates restrictions are so substantial that they create a *de facto* prohibition on the sale of [firearms] that may fall under New Jersey's statutory definition of semi-automatic firearms. Any potential owner must qualify under two lengthy application procedures, and may be refused at any time the State determines such a license does not serve the public interest. This regulatory scheme vests unbridled discretion over the licensing process with the State." *Coalition of New Jersey Sportsmen v. Florio*, 744 F. Supp. 602, 608 (D.N.J. 1990).

23. Violating New Jersey's ban on common semi-automatic firearms is a crime of the second degree, punishable by between five and ten years' imprisonment and a fine of up to $150,000, with harsh minimum mandatory sentences with no judicial discretion. *Id.* §§ 2C:39-5(f), 2C:43-3(a)(2), 2C:43-6.

---

[2] The statute also provides two exceptions not applicable here. A person could have registered a banned firearm that was acquired prior to May 1, 1990. N.J.S. 2C:39-5(f). The window to register such firearm closed one year from the effective date of the 1990 ban, and such a registered firearm cannot be transferred or inherited. N.J.S. 2C:58-12. A person could also have rendered a banned firearm inoperative, N.J.S. 2C:39-5(f), which in light of the Second Amendment right to possess arms for self-defense makes this exception not relevant to this action.

### New Jersey Has Banned and Criminalized a
### Common and Important Means of Self-Defense

24. The common semi-automatic firearms banned by the Act are, and have been, commonly used by law-abiding, responsible citizens in New Jersey and throughout the United States for lawful purposes, including defense of self and family in the home.

25. The United States Supreme Court stated, in *Heller*, that "the sort of weapons protected" by the Second Amendment are those "'in common use at the time.'" *Heller*, 554 U.S. at 627, *quoting United States v. Miller*, 307 U.S. 174, 179 (1939); *Bruen*, 597 U.S. at ___, slip op. at 12. The Court, in *Heller*, held that "a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose" was not constitutional, especially when that prohibition extends "to the home, where the need for defense of self, family, and property is most acute." *Heller*, 554 U.S. at 628.

26. The banned semiautomatic long guns are in common use at the present time. *Heller v. District of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("*Heller II*") ("We think it clear enough in the record that semi-automatic rifles and magazines holding more than ten rounds are indeed in 'common use' as the plaintiffs contend."). *See also Staples v. United States,* 511 U.S. 600, 612 (1994). They are therefore "arms," as the people would have understood that term at the founding, and are protected under the Second Amendment. *Bruen*, 597 U.S. at ___, slip op. at 19.

27. The common uses of the banned firearms include defense of self in the home, hunting, and sport.

28. "In *Heller,* the Supreme Court held that handguns—the vast majority of which today are semi-automatic—are constitutionally protected because they have not traditionally been banned and are in common use by law-abiding citizens. There is no meaningful or persuasive

constitutional distinction between semi-automatic handguns and semi-automatic rifles. Semi-automatic rifles, like semi-automatic handguns, have not traditionally been banned and are in common use by law-abiding citizens for self-defense in the home, hunting, and other lawful uses." *Heller II*, 670 F.3d at 1269 (Kavanaugh, J, dissenting).

29. Between the Act's prohibition of the enumerated 66 long guns and "substantially identical" firearms, the Act effectively bans the acquisition of semiautomatic long guns that are commonly used for lawful purposes, including self-defense in the home. Although the Act describes common semi-automatic firearms as "assault firearms," this is a gross and misleading misnomer. *Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting) ("'Prior to 1989, the term "assault weapon" did not exist in the lexicon of firearms. It is a political term, developed by anti-gun publicists to expand the category of "assault rifles" so as to allow an attack on as many additional firearms as possible on the basis of undefined "evil" appearance.'") (citation omitted). Common semi-automatic firearms are a normal feature of lawful firearms possession in the United States.

30. Firearms such as these are spread throughout the country. Common semi-automatic firearms are legal under both federal law and the laws of at least 41 states.

31. The ubiquity of common semi-automatic firearms among law-abiding Americans demonstrates that they are used for lawful purposes, such as self-defense, hunting, competition, and target shooting.

32. In line with the widespread possession and use of common semi-automatic firearms, there is no longstanding or historical tradition of prohibiting such firearms. Firearm bans like this one were unknown in the United States before the twentieth century. Bans like New

Jersey's are a recent phenomenon in American history. New Jersey, for example, had never banned commonly possessed firearms before the enactment of the Act in 1990.

33. The rifles and shotguns banned by the Act have attributes that promote accuracy or otherwise promote their effective use. For example, under the Act, a semi-automatic, centerfire rifle that simply has an ability to accept a detachable magazine in not an "assault firearm." Nor is such a rifle with either a folding stock or a flash suppressor. Under the Act's "two feature" test, however, this ordinary rifle becomes an "assault firearm" of the "substantially identical" variety by reason of having both of these features—features that promote efficient and effective use and transport of the firearm.

34. A "flash suppressor" reduces the visible flash of light produced by firing the rifle. This reduces the likelihood of momentarily blindness after firing at an assailant, and it may reduce an assailant's ability to pinpoint his potential victim's position when the potential victim fires a shot in low-light conditions. David B. Kopel, *Rational Basis Analysis of "Assault Weapon" Prohibition*, 20 J. Contemp. L. 381, 397 (1994).

35. A "folding stock" allows a rifle to be stored and transported more compactly, while a "telescoping stock" merely allows the user to adjust the overall length of the firearm to better suit their body size, the reach of their arms, and the bulk of the clothes they are wearing. Either aids in maneuvering around tight spaces in a home aiding in self-defense. *Id*. at 398–99.

36. Detachable magazines assist a home defender in reloading and remedying firearm stoppages and malfunctions which can severely impair the ability of a homeowner to deploy his firearm for self-defense.

37. A protruding pistol grip better stabilizes a rifle or shotgun on the shoulder for improved accuracy and effectiveness in self-defense.

38. These features combine to allow law-abiding, responsible citizens to easily store a rifle or shotgun in their homes and, if need be, use it effectively to defend themselves.

39. None of the above features makes a firearm more powerful or dangerous; rather, they allow citizens who are under the extreme stress of having to deal with an armed assailant to defend themselves more effectively. Prohibiting firearms with features that promote their efficient and effective use infringes on the core Second Amendment right because it meaningfully limits the ability of law-abiding, responsible citizens to defend themselves in their own homes.

40. These weapons are commonly used for defensive purposes and are highly useful for self-defense. For example, semi-automatic rifles that are banned by the Act allow individuals to accurately engage their assailants at distances further away than they would be able to with handguns, thus increasing the likelihood that the defender will survive an encounter.

41. The Act effectively bans the acquisition of common semi-automatic firearms by virtue of the enumerated list of 66 firearms and the expansive definition of "substantially identical" firearms. This is precisely the type of restriction found unconstitutional in *Heller*.

42. Unlike law-abiding citizens, violent criminals will not be meaningfully constrained by New Jersey's ban. Given the tens of millions of common semi-automatic firearms in circulation in the country, it will not be difficult for violent criminals to acquire them despite New Jersey's ban. And unlike law-abiding citizens, violent criminals will have no compunction about violating the ban.

43. While the Act's prohibition of common semi-automatic firearms mischaracterized as "assault firearms" impermissibly restricts the core Second Amendment right of law-abiding, responsible citizens to acquire and possess these commonly used firearms in their homes for self-defense, the restrictions will not reduce homicides or other violent crime or improve public safety.

**The Ban Prevents Plaintiffs from Acquiring Common Arms for Self-Defense**

44. Plaintiff Ellman is an adult citizen and resident of New Jersey. He does not fall within any of the exceptions enumerated in New Jersey's ban on common semi-automatic firearms. Plaintiff Ellman is a firearms instructor, range safety officer, armorer, and competitive shooter.

45. Plaintiff Ellman wishes to own common semi-automatic firearms for lawful purposes, including self-defense in the home. In particular, Plaintiff Ellman would choose a common semi-automatic rifle as an option for home defense because, as an experienced firearm owner and instructor, he believes that a common semi-automatic rifle is ideally suited to his home defense needs. But for the ban, Plaintiff Ellman would acquire and keep one or more common semi-automatic firearms in his New Jersey home. Because of New Jersey's ban and the associated criminal penalties, he refrains from doing so.

46. Plaintiff Ellman would apply for a license to possess common semi-automatic firearms, but he knows that such an attempt would be futile and he would be denied.

47. Plaintiff Rogers is an adult citizen and resident of New Jersey. He does not fall within any of the exceptions enumerated in New Jersey's ban on common semi-automatic firearms. Plaintiff Rogers is a long time, experienced firearms owner, having owned and responsibly used firearms for more than 40 years.

48. Plaintiff Rogers wishes to own common semi-automatic firearms for lawful purposes, including self-defense in the home. In particular, Plaintiff Rogers would choose a common semi-automatic shotgun as an option for home defense because, as an experienced firearm owner, he believes that a common semi-automatic shotgun is ideally suited to his home defense needs. But for the ban, Plaintiff Rogers would acquire and keep one or more common

semi-automatic firearms in his New Jersey home. Because of New Jersey's ban and the associated criminal penalties, he refrains from doing so.

49. Plaintiff Rogers would apply for a license to possess common semi-automatic firearms, but he knows that such an attempt would be futile and he would be denied.

50. Plaintiff ANJRPC has members , including Plaintiffs Ellman and Rogers, who wish to acquire—and but for the ban would acquire— common semi-automatic firearms for purposes of self-defense in the home or other lawful purposes. Such members would apply for a license to possess common semi-automatic firearms, but they know that such an attempt would be futile and they would be denied.

## COUNT ONE
### Deprivation of Plaintiffs' Rights Under U.S. CONST. amends. II and XIV

51. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

52. The Second Amendment to the U.S. Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Second Amendment applies against the States via the Fourteenth Amendment. *See McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010).

53. New Jersey's definition of "assault firearm" includes many firearms that are typically possessed by law-abiding citizens for lawful purposes nationwide (and, before the ban, in New Jersey). New Jersey law therefore generally prohibits residents of New Jersey, including Plaintiff Ellman, Plaintiff Rogers, and other members of ANJRPC, from possessing firearms protected by the Second Amendment, subject to significant criminal penalties, including imprisonment.

54. New Jersey's ban on common semi-automatic firearms extends its prohibition into the home. "[W]hatever else [the Second Amendment] leaves to future evaluation, it surely elevates

above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

55. Because common semi-automatic firearms are in common use and "chosen by Americans for self-defense in the home, . . . a complete prohibition of their use is invalid" under the Second Amendment. *Id.* at 629.

## PRAYER FOR RELIEF

56. WHEREFORE, Plaintiffs pray for an order and judgment:

a. Declaring that New Jersey's ban on certain semi-automatic firearms, as set forth in N.J.S. 2C:39-5(f) and any implementing regulations, violates the Second and Fourteenth Amendments and is thus devoid of any legal force or effect;

b. Permanently enjoining Defendants Platkin, Callahan, McNamee, Brown, and their employees and agents from enforcing N.J.S. 2C: 39-5(f) and any implementing regulations;

c. Awarding Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action, pursuant to 42 U.S.C. § 1988; and

d. Granting such other and further relief as this Court deems just and proper.

Dated: July 1, 2022                                             Respectfully submitted,

                              s/ Daniel L. Schmutter
                              Daniel L. Schmutter
                              HARTMAN & WINNICKI, P.C.
                              74 Passaic Street
                              Ridgewood, New Jersey 07450
                              (201) 967-8040
                              (201) 967-0590 (fax)
                              dschmutter@hartmanwinnicki.com
                              *Attorneys for Plaintiffs*

**DECLARATION OF COUNSEL PURSUANT TO LOCAL CIV. R. 11.2**

The undersigned hereby states that the matter in controversy challenges some of the same conduct of some of the Defendants as the following action pending in the District of New Jersey: *Cheeseman v. Platkin*, No. 1:22-cv-4360.

I declare under penalty of perjury that the foregoing is true and correct.

<div style="text-align:right">

s/ Daniel L. Schmutter
Daniel L. Schmutter
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com
*Attorney for Plaintiffs*

</div>

Dated: July 1, 2022